UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------- X
STEVEN SCHMALZ on behalf of himself and :
all others similarly situated,
                                               :
       Plaintiff,                       Case 7:08-cv-00264-KMK
                                               :
  -against-
                                               :
MBIA, INC., GARY C. DUNTON, EDWARD
CHAPLIN,
                                               :
       Defendants.
---------------------------------------- X
TEAMSTERS LOCAL 807 LABOR
MANAGEMENT PENSION FUND,
Individually and on behalf of all others
similarly situated,                                 :   Case No. 1:08-cv-01845-UA

       Plaintiff,

  -against-

MBIA INC., GARY C. DUNTON, C.
EDWARD CHAPLIN, and JOSEPH W.
BROWN

       Defendants.
---------------------------------------- X
GARY KOSSEFF, Individually and on behalf
of all others similarly situated,

       Plaintiff,                   Case No. 7:08-cv-02362-UA

  -against-

MBIA INC., GARY C. DUNTON, and C.
EDWARD CHAPLIN

       Defendants.

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THE TULARE COUNTY EMPLOYEES' RETIREMENT ASSOCIATION'S MOTION TO BE APPOINTED LEAD PLAINTIFF; TO APPROVE PROPOSED LEAD PLAINTIFF'S CHOICE OF COUNSEL; AND TO CONSOLIDATE ALL RELATED ACTIONS**

# TABLE OF CONTENTS

I. INTRODUCTION ............................................................................................................. 1

II. SUMMARY OF FACTS .................................................................................................. 2

III. PROCEDURAL BACKGROUND................................................................................... 4

IV. ARGUMENT..................................................................................................................... 4

    A. The Above-Capitoned Actions Should Be Consolidated....................................... 4

    B. Movant Should Be Appointed Lead Plaintiff Pursuant To The Reform Act......... 5

        1. Movant Has A Significant Financial Interest In Te Relief Sought By The Class ............................................................................................ 7

        2. Movant Has Made A Sustantial Showing That It Satisfied The Adequacy And Typicality Requirements O Rule 23 ............................... 8

            (i) Movant Will Fairly And Adequately Protect The Interests Of The Class...................................................................................... 9

            (ii) Movant's Claims Are Typical Of Those Of The Class.................. 9

    C. The Court Should Approve Movant's Choice of Counsel................................... 10

V. CONCLUSION................................................................................................................ 10

# **TABLE OF AUTHORITIES**

**FEDERAL CASES**

*Baffa v. Donaldson, Lufkin & Jenrette Securities Corp.*,
   222 F.3d 52 (2d Cir. 2000)..................................................................................................9

*Berger v. Compaq Computer Corp.*,
   257 F.3d 475 (5th Cir. 2001) .....................................................................................1, 7, 9

*Burke v. Ruttenberg*,
   102 F. Supp. 2d 1280 (N.D. Ala. 2000) ..............................................................................9

*Hicks v. Morgan Stanley & Co.*,
   No. 01-Civ-10071(HB), 2003 WL 21672085 (S.D.N.Y. July 16, 2003)...............................10

*In re Corel Corp., Inc. Sec. Litig.*,
   206 F.R.D. 533 (E.D. Pa. 2002)..........................................................................................10

*In re Enron Corp. Sec. Litig.*,
   206 F.R.D. 427 (S.D. Tex. 2002)................................................................................ 1, 4, 6-7

*In re Interpublic Securities Litigation*,
   No. 02-Civ-6257(DLC), 2003 WL 22509414 (S.D.N.Y. Nov. 6, 2003)...................................9

*Mayo v. Apropos Tech., Inc.*,
   No. 02-CV-8406, 2002 WL 193393 ....................................................................................5

*In re Network Assocs., Inc. Sec. Litig.*,
   76 F. Supp. 2d 1017 (N.D. Cal. 1999) .................................................................................1

*In re Olsten Corp. Secs. Litig.*,
   3 F. Supp. 2d 292 (E.D. N.Y. 1998) ....................................................................................5

*Internet Law Library, Inc. v. Southridge Capital Management, LLC*,
   208 F.R.D. 59 (S.D. N.Y. 2002) ..........................................................................................5

*Schulman v. Lumenis, Ltd.*,
   No. 02-Civ-1989, 2003 WL 21415287 (S.D. N.Y. June 18, 2003) .......................................5

**FEDERAL STATUTES**

15 U.S.C. §78u-4 ........................................................................................................... Passim

PSLRA, P.L. 104-67, 109 Stat. 737........................................................................................1

**RULES**

Fed. R. Civ. P. 23................................................................................................................ Passim

Fed. R. Civ. P. 42 ................................................................................................................... 5

Rule 10b-5 ............................................................................................................................ 4

**I.      INTRODUCTION**

The Tulare County Employees' Retirement Association ("TCERA" or "Movant") suffered a substantial loss as a result of its purchases of securities issued by MBIA, Inc. ("MBIA" or the "Company") between October 26, 2006 through and including January 9, 2008 (the "Class Period"). Pursuant to Section 21D(a)(3)(B) of the Securities Exchange Act of 1934, 15 U.S.C. §78u-4(a)(3)(B) (the "Exchange Act"), as amended by Section 101(a) of the Private Securities Litigation Reform Act of 1995, P.L. 104-67, 109 Stat. 737 (the "Reform Act" or "PSLRA"), Movant respectfully submits this memorandum of law in support of its motion for an Order: (1) appointing Movant as Lead Plaintiff on behalf of purchasers of MBIA securities; (2) approving Movant's choice of the law firm Cohen, Milstein, Hausfeld & Toll, P.L.L.C. ("Cohen Milstein") as Lead Counsel for the class; and (3) consolidating the above-captioned actions, as well as any other related actions pending in this Court and any subsequently filed or transferred actions.[1]

Congress's objective in enacting the Reform Act was to encourage investors, such as Movant, who has a substantial stake in the action, to step forward to serve as Lead Plaintiffs in federal securities class actions. *See In re Network Assocs., Inc. Sec. Litig.*, 76 F. Supp. 2d 1017, 1020 (N.D. Cal. 1999). Congress decided that investors, and particularly institutional investors, with significant losses would not only have a true financial interest in the action, but also properly guide the litigation. *In re Enron Corp. Sec. Litig.*, 206 F.R.D. 427, 442 (S.D. Tex. 2002). Therefore, Movant is exactly the type of investor that Congress intended to serve as lead plaintiff.

Movant has the desire, ability and resources to actively participate in the monitoring of this class action so that a maximum recovery for the putative class is obtained. *See Berger v. Compaq Computer Corp.*, 257 F.3d 475, 483 (5th Cir. 2001) ("securities class actions [should] be managed by

---

[1] Counsel is aware that, pursuant to Section II(A) of this Court's Individual Rules of Practice, a pre-motion conference is generally required prior to the filing of a motion. However, because this motion is specifically governed by the PSLRA, counsel respectfully requests relief from the rule.

1

active, able class representatives who are informed and can demonstrate they are directing the litigation").

Movant suffered damages of more than $1,691,000 as a result of its purchases of MBIA securities at artificially inflated values due to Defendants' conduct. To counsel's knowledge, Movant's losses exceed those of any other plaintiff in these related actions who invested in MBIA securities. Thus, under Section 21D of the Exchange Act, Movant is presumptively the "most adequate plaintiff" and should be appointed as Lead Plaintiff because it has "the largest financial interest in the relief sought by [the] class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb). Movant is represented in this action by Cohen Milstein, who is seeking appointment as Lead Counsel for purchasers of MBIA securities, and is eminently qualified to prosecute securities fraud claims such as these. Moreover, Movant has signed a certification expressing its desire and willingness to serve as a representative party on behalf of the class. *See* Torell Decl., Ex. B. Therefore, Movant should be appointed Lead Plaintiff in this action on behalf of purchasers of MBIA securities.

## II.    SUMMARY OF FACTS

On or about January 11, 2008, Steven Schmalz filed the first complaint against MBIA and certain of its officers and directors (collectively "Defendants") alleging violations of Sections 10(b) and 20(a) of the Exchange Act. An additional related action (collectively, the "Related Actions") was filed shortly thereafter in this Court.[2] The Related Actions allege that, throughout the Class Period, Defendants failed to disclose material adverse facts about the Company's financial well-being, business relationships, and prospects.

More specifically, the Related Actions allege that the Defendants misrepresented and/or failed to disclose the Company's exposure to losses stemming from MBIA's issuance of residential mortgage-backed securities ("RMBS"), including, in particular, its exposure to so-called "CDO-

---

[2] In addition to the Related Actions, a derivative action has also been filed on behalf of MBIA.

2

squared" securities, an investment that is particularly risky because it is a Collateralized Debt Obligation ("CDO") whose collateral is other CDOs. Throughout the Class Period, the Company reserved for new CDO defaults at the same 12% of new insurance premium income rate that it had applied to its municipal bond insurance. Subsequent disclosures regarding the CDO-squared portfolio indicate that MBIA's reserves were not adequate for the risk MBIA faced. If downgraded from a AAA credit rating, MBIA would not be able to write insurance policies on bonds that have a lower rating than it does, a segment that makes up the vast majority of the Company's business.

On December 19, 2007, Standard and Poor's ("S&P") issued a report placing the Company's AAA credit rating on negative watch. Contained within the S&P report was an analysis of information provided by MBIA to S&P (but not previously to investors) that showed the Company's total CDOs with RMBS exposure was $30.4 billion. This was nearly twice the figure reported in an August 2, 2007 analyst presentation and $11 billion more than the Company reported in its earnings call on October 5, 2007. After the close of trading on December 19, the Company put on its website an analysis of its CDO portfolio that disclosed for the first time that $8.1 billion of MBIA's Multi-Sector CDOs were exposed to a significant amount of RMBS risk. On this news, MBIA shares declined 26%, from $27.02 per share to $19.95 per share on December 20, 2007. This was the biggest one-day decline in the Company's history.

Then, on January 9, 2008, MBIA disclosed that its financial results were weaker than expected and that regulators were scrutinizing the Company's financial statements. First, MBIA reported that it expected to incur a total of $737 million in loss and loss adjustment expenses for the fourth quarter of 2007 as a result of securities backed by residential home equity loans. The Company announced that it estimated it would take a $3.3 billion loss as a result of its CDO portfolio. Moreover, MBIA supplemented its prior disclosure of its CDO-squared exposure to reveal even further information – indicating that its exposure was actually close to $9 billion. Lastly, the

3

Company announced that the New York State Insurance Department and the SEC were informally investigating the Company.

## III.     PROCEDURAL BACKGROUND

To date, there are at least two (2) cases pending in this District that allege claims for violation of Sections 10(b) and 20(a) of the Exchange Act and Rule 10b-5 promulgated thereunder on behalf of investors who purchased MBIA securities during the Class Period. The Related Actions are included in the caption of this memorandum.

The Reform Act provides that "if more than one action on behalf of a class asserting substantially the same claim or claims arising under this chapter has been filed," a court shall not make the determination of the most adequate plaintiff until "after the decision on the motion to consolidate is rendered." 15 U.S.C. §78u-4(a)(3)(B)(ii). *See also Enron*, 206 F.R.D. at 438. Consolidation is particularly appropriate in securities class action litigation especially where, as here, the claims asserted in all the actions are virtually identical. *Id.*

## IV.     ARGUMENT

### A.     The Above-Captioned Actions Should Be Consolidated

The PSLRA provides that "if more than one action on behalf of a class asserting substantially the same claim or claims arising under this chapter has been filed," the Court shall not make the determination of the most adequate plaintiff until "after the decision on the motion to consolidate is rendered." 15 U.S.C. §78u-4(a)(3)(B)(ii). Thereafter, the Court "shall appoint the most adequate plaintiff as lead plaintiff for the consolidated actions." *Id.*

Pursuant to Rule 42(a) of the Federal Rules of Civil Procedure, when actions involving common questions of law or fact are pending, the district court is vested with broad powers to consolidate such actions if the court, in its discretion, determines that consolidation would facilitate the administration of justice. *See Mayo v. Apropos Tech., Inc.*, No. 02-CV-8406, 2002 WL 193393,

at * 2 (N.D. Ill. Feb. 7, 2002). Rule 42(a) states:

> When actions involving a common question of law or fact are pending before the court, it may order a joint hearing or trial of any or all the matters in issue in the actions; it may order all the actions consolidated; and it may make such orders concerning proceedings therein as may tend to avoid unnecessary costs or delay.

Fed. R. Civ. P. 42(a).

Consolidation is particularly appropriate in securities class action litigation. *See, e.g., Schulman v. Lumenis, Ltd.*, 2003 WL 21415287, at *2 (S.D.N.Y. June 18, 2003); *Internet Law Library, Inc. v. Southridge Capital Management, LLC*, 208 F.R.D. 59, 61 (S.D.N.Y. 2002). Indeed, "[i]n securities actions where the complaints are based on the same 'public statements and reports' consolidation is appropriate if there are common questions of law and fact and the parties will not be prejudiced." *In re Olsten Corp. Secs. Litig.*, 3 F. Supp. 2d at 292.

As noted above, at least two Related Actions have been filed which allege the same fraud with respect to the same or substantially the same conduct. All of the documents to be reviewed and testimony to be taken in the Related Actions are identical. The witnesses, except for plaintiffs for class certification purposes, are virtually the same. Therefore, consolidation is appropriate and in the interest of judicial economy.

      **B.**    **Movant Should Be Appointed Lead Plaintiff Pursuant To The Reform Act**

The Reform Act provides a detailed procedure for the selection of lead plaintiff to oversee securities class actions. First, within 20 days after the date on which a class action is filed, the plaintiff or plaintiffs shall cause to be published, in a widely circulated national business-oriented publication or wire service, a notice advising members of the purported plaintiff class:

    (I)    of the pendency of the action, the claims asserted therein, and the purported class period; and

    (II)    that, not later than 60 days after the date on which the notice is published, any member of the purported class may move the court to serve as lead plaintiff of the purported class.

5

*See* 15 U.S.C. §78u-4(a)(3)(A)(i). In this case, notice was first published on *Market Wire* on January 11, 2008. *See* Torell Decl., Ex. A. Accordingly, this motion is timely filed within 60 days of the date of publication.

The Court is directed by the Reform Act to consider any motions brought by plaintiffs or purported class members who wish to serve as lead plaintiff not later than 90 days after the date of publication, or as soon as practicable after the court decides any pending motion to consolidate. *See* 15 U.S.C. §78u-4(a)(3)(B)(i). In selecting a lead plaintiff, a court must appoint the "most adequate plaintiff" based on the following statutory factors:

> the court shall adopt a presumption that the most adequate plaintiff in any private action arising under this chapter is the person or group of persons that …
>
> > (aa)  has either filed the complaint or made a motion in response to a notice;
> >
> > (bb)  in the determination of the court, has the largest financial interest in the relief sought by the class; and
> >
> > (cc)  otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. § 78u-4(a)(3)(B)(iii).

When applying these factors, courts have emphasized that, in enacting the Reform Act, Congress "call[ed] for greater supervision by the Court in the selection of which plaintiffs will control the litigation." *Enron*, 206 F.R.D. at 439. As a result, each movant has the initial burden of demonstrating to the court that it is the most adequate plaintiff. *See Berger*, 257 F.3d at 481 ("[a]dequacy is for the plaintiffs to demonstrate"); *Enron,* 206 F.R.D. at 441 ("The adequacy of the putative class representative(s) and of plaintiffs' counsel should not be presumed, however, in the absence of proof to the contrary; plaintiff bears the burden of demonstrating his and his counsel's adequacy"). In support of its desire to serve as lead plaintiff, TCERA has signed a certification expressing its willingness to serve as a representative party on behalf of the class. *See* Torell Decl., Ex. B.

### 1. Movant Has A Significant Financial Interest In The Relief Sought By The Class

In adjudicating this motion, the Court must be guided by a presumption that the most adequate plaintiff is the person or group of persons who: (a) filed a complaint or made a motion to serve as lead plaintiff; (b) has the largest financial interest in the relief sought by the class; and (c) otherwise satisfies the requirements of Fed. R. Civ. P. 23. 15 U.S.C. § 78u-(4)(a)(3)(B)(iii)(I). This presumption may be rebutted by proof that the presumptively most adequate plaintiff "will not fairly and adequately protect the interests of the class" or "is subject to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C. § 78u-(4)(a)(3)(B)(iii)(II). Movant overwhelmingly satisfies these requirements.

During the Class Period, Movant suffered a total loss of more than $1,691,000 from its purchases of MBIA securities. *See* Torell Decl., Ex. B. Movant believes it has the largest financial interest in the relief sought by the Class of purchasers of MBIA securities. Movant is willing to actively participate in the leadership of this litigation through both personal involvement and consultation with its chosen counsel.

Moreover, because Movant possess the largest financial interest in the outcome of this litigation, it is presumed to be the "most adequate plaintiff" to represent the class. 15 U.S.C.§ 78u-(4)(a)(3)(B)(iii)(I)(bb). Movant is both qualified to represent the class and is willing to serve as a representative party. In addition, Movant has selected counsel that is highly experienced in prosecuting securities class actions such as this one. *See* Torell Decl., Ex. C. Accordingly, Movant satisfies the requirements for appointment as Lead Plaintiff under the Reform Act and the instant motion should be granted.

As of this filing, Movant has not received any notice that any other potential applicant has sustained a greater financial loss in connection with the purchase and/or sale of MBIA securities during the Class Period, nor has it been served with any papers on behalf of any other movant for

Lead Plaintiff in this case. Accordingly, Movant satisfies the second prong of the "most adequate plaintiff" test.

### 2. Movant Has Made A Substantial Showing That It Satisfies The Adequacy And Typicality Requirements Of Rule 23

The third prong of the "most adequate plaintiff" test is that a lead plaintiff must otherwise satisfy the requirements of Rule 23 of the Federal Rules of Civil Procedure. *See* 15 U.S.C. §78u-4(a)(3)(B)(i). Rule 23(a) provides that a party may serve as a class representative only if the following four prerequisites are met:

1. the class is so numerous that joinder of all members is impracticable;

2. there are questions of law or fact common to the class;

3. the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

4. the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).

In its determination and selection of the most adequate plaintiff, the "Court must be inordinately careful, making certain that the requirements of section 21D(a) are assiduously applied in line with the purposes of Congress in the enactment of the 1995 Reform Act." *Burke v. Ruttenberg*, 102 F. Supp. 2d 1280, 1309 (N.D. Ala. 2000); S*ee also Berger*, 257 F.3d at 484 (stating that the district court has an obligation "to assess the representatives own qualifications to take an active role in and control the litigation").

### (i) Movant Will Fairly And Adequately Protect The Interests Of The Class

As stated above, it is equally important that the lead plaintiff not only have a significant financial interest in the case, but also demonstrates its adequacy to oversee the prosecution of the case as a fiduciary to the class. Courts have noted that adequacy of representation requires inquiry into whether: (a) the plaintiff's attorneys are qualified, experienced, and generally able to conduct the proposed litigation, and (b) the plaintiff's interests are not antagonistic to those of the class. *See Baffa v. Donaldson, Lufkin & Jenrette Securities Corp.*, 222 F.3d 52, 60 (2d Cir. 2000); *see also In re Interpublic Securities Litigation*, No. 02-Civ-6257(DLC), 2003 WL 22509414, at *3 (S.D.N.Y. Nov. 6, 2003).

The interests of Movant are clearly aligned with those of the class, and there is no evidence of any conflict of interest between Movant and any other member of that class. Indeed, Movant's financial stake in the outcome of this litigation provides significant and compelling evidence that its interests in prosecuting this action are aligned with the interests of the class.

### (ii) Movant's Claims Are Typical Of Those Of The Class

The typicality requirement of Rule 23(a) of the Federal Rules of Civil Procedure is satisfied when a plaintiff's claims arise from the same event or practice or course of conduct that gives rise to the claims of other class members and the claims are based on the same legal theory. *See id.* at *7; *Hicks v. Morgan Stanley & Co.*, No. 01-Civ-10071(HB), 2003 WL 21672085, at *2 (S.D.N.Y. July 16, 2003). Rule 23 does not require that the lead plaintiff be identically situated with all class members.

The questions of law and fact common to the members of the Class which also affect Movant include, but are not limited to, the following:

(a) Whether the federal securities laws were violated by defendants' acts as alleged in the complaint;

9

    (b)    Whether documents, including the Company's SEC filings, press releases and other public statements made by Defendants during the Class Period contained misstatements of material fact;

    (c)    Whether the market price of MBIA stock during the Class Period was artificially inflated due to Defendants' conduct; and

    (d)    Whether the members of the Class have sustained damages and, if so, the proper measure of those damages.

These common questions of law and fact apply to Movant and to all members of the purported class. Movant purchased securities issued by MBIA during the Class Period and suffered damages as a result of Defendants' fraudulent scheme and in reliance on their misrepresentations, as did all of the other members of the class. The typicality requirement is therefore satisfied because Movant's claims are based on the same legal theories and arise from the same event or course of conduct giving rise to the claims of other class members. *See In re Corel Corp., Inc. Sec. Litig.,* 206 F.R.D. 533, 541-542 (E.D. Pa. 2002).

### C. The Court Should Approve Movant's Choice of Counsel

Pursuant to 15 U.S.C. §78u-4(a)(3)(B)(v), the proposed Lead Plaintiff shall, subject to the Court's approval, select and retain counsel to represent the class. Movant has selected the law firm Cohen Milstein as Lead Counsel. As illustrated by the attached firm biography, Cohen Milstein has extensive experience in successfully prosecuting securities fraud actions and has appeared in major class actions all around the country, including in this District. *See* Torell Decl., Ex. C.

### V. CONCLUSION

For all the foregoing reasons, Movant respectfully requests that the Court: (1) appoint it as the Lead Plaintiff for the class; (2) approve its selection of Lead Counsel, and (3) consolidate the above-captioned actions, as well as any other related actions pending in this Court and any subsequently filed or transferred actions.

Dated: Washington, D.C.
      March 11, 2008

Respectfully submitted,

**Cohen, Milstein, Hausfeld & Toll P.L.L.C.**

By:    /s/ Catherine A. Torell
    Catherine A. Torell (CAT-0905 )
    150 East 52nd Street, 30th Floor
    New York, New York 10022
    Tel: (212) 838 7797
    Fax: (212) 838-7745
    *-and-*
    Steven J. Toll
    Mark S. Willis
    Jason M. Leviton
    1100 New York Avenue, N.W.
    Suite 500, West Tower
    Washington, D.C. 20005
    Tel: 202-408-4600
    Fax: 202-408-4699

*Proposed Lead Counsel for the Class*